## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| NILEX USA INC. | ) | Case No. |
| | ) | |
| Debtor in Foreign Proceeding. | ) | |

### DECLARATION OF ROBERT KOFMAN IN SUPPORT OF:
### (I) PETITION FOR RECOGNITION AS A FOREIGN MAIN PROCEEDING;
### (II) MOTION FOR ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING
### ORDER AND PRELIMINARY INJUNCTIVE RELIEF; AND (III) MOTION FOR
### ORDER APPROVING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS
### AND INTERESTS AND GRANTING RELATED RELIEF

I, Robert Kofman, state as follows in support of the *Petition For Recognition as a Foreign Main Proceeding* (the "*Petition*"); the *Motion For Order to Show Cause With Temporary Restraining Order and Preliminary Injunctive Relief* (the "*Motion*"); and the *Motion for Order Approving Sale of Assets Free and Clear of Liens, Claims and Interests and Granting Related Relief* (the "*Sale Motion*"):

1.      I am a Managing Director at the firm of KSV Restructuring Inc. ("**KSV**").  I have personal knowledge of all the statements made in this Declaration.

2.      KSV is the Proposal Trustee (the "**Proposal Trustee**") for Nilex Inc. ("**Nilex Canada**") and Nilex USA Inc. ("**Nilex USA**") (collectively referred to as the "**Nilex Debtors**") in the proceeding pending in the Court of King's Bench of Alberta, Canada (the "**Alberta Court**"), Court File No. 24-2878531 (the "**Canadian Proceedings**") under the Bankruptcy and Insolvency Act (the "**BIA**").

3.      To the best of my knowledge and belief, the Canadian Proceedings are the only judicial or administrative proceeding, including an interim proceeding, under a law relating to

119503155.2

insolvency or adjustment of debt in which proceeding the assets and affairs of the Nilex Debtors are subject to control or supervision by a court, for the purpose of reorganization or liquidation.

4.    Nilex USA is seeking protection under chapter 15 of the Bankruptcy Code. The principal purpose of these proceedings, along with the Canadian Proceedings is to: (a) create a stabilized environment to allow the Nilex Debtors to complete the transaction identified in the sale process commenced prior to these proceedings (the "**Sale Process**") by Nilex Inc. ("**Nilex Canada**"), which was carried out by an investment banker it retained, Valitas Capital Partners ("**Valitas**"), in respect of the business and assets of the Nilex Debtors, which Sale Process was approved by the Alberta Court on November 8, 2022, and which resulting going concern transaction is in the best interests of the Nilex Debtors and their stakeholders; and (b) if appropriate, file a proposal in the Canadian Proceedings for the benefit of the creditors of the Nilex Debtors.

**The Structure and General Operations of the Nilex Debtors.**

5.    Nilex Canada is a corporation formed under the laws of Alberta, Canada with its headquarters and principal place of business located in Edmonton, Alberta, Canada. Nilex Canada has been operating in the geosynthetics industry providing civil environmental products and technologies since 1977. The Nilex Debtors provide environmental solutions that are used in road building, erosion and sediment control, water management and containment. The Nilex Debtors also offer conversion and fabrication options, along with customization of standard products to site and project-specific requirements. Nilex Canada leases its head office in Edmonton and also operates from leased premises in Calgary, Saskatoon, Surrey and Toronto. Nilex Canada presently has approximately 70 full-time employees and 44 seasonal employees. Nilex Canada is the 100%

119503155.2

shareholder of Nilex USA, which operates from leased premises in Utah and Colorado. Nilex USA has approximately eight full-time employees.

6.      Canadian Imperial Bank of Commerce ("**CIBC**") is the Nilex Debtors' senior secured lender. As of October 17, 2022, CIBC was owed approximately $13.42 million by the Nilex Debtors.[1] PEF 2010 Nilex Investment Limited Partnership ("**Fulcrum**") has been Nilex Canada's controlling shareholder since 2013. Fulcrum is also a secured creditor of Nilex Canada. Fulcrum has contractually subordinated the amounts owed to it by Nilex Canada to CIBC. As of August 31, 2022, Fulcrum was owed approximately $33.8 million by Nilex Canada. CIBC has and is continuing to provide funding to Nilex Canada for the benefit of the Nilex Debtors during the Canadian Proceedings - its post-filing advances are secured under a Court-approved lender priority charge authorized in the Canadian Proceedings.

**Business Operations and Financial Performance of the Nilex Debtors.**

7.      Headquartered in Edmonton, Alberta with operations in Canada and the United States, the Nilex Debtors are providers of environmental solutions that are used in road building, erosion and sediment control, water management and containment. As set forth below, due to the COVID-19 pandemic, rising material costs, supply chain issues and slow-downs in the construction industry in those regions of Canada and the United States where the Nilex Debtors conduct operations, the Nilex Debtors have incurred significant and recurring losses for several consecutive years.

8.      Nilex Canada had sales in each of 2020 and 2021 in excess of $37 million. As of August 31, 2022, it had assets with a book value of approximately $25 million. As of October 17, 2022, its obligations to CIBC totaled approximately $13.42 million (the "**CIBC Debt**") and its

---

[1] Unless otherwise noted herein, all currency references are to U.S. dollars.  Currently, the exchange rate is 1.33 Canadian dollars for each U.S. dollar.

119503155.2

obligations to Fulcrum totaled, as of August 31, 2022, approximately $33.8 million. As of the NOI filing date of October 27, 2022, it owed its 232 unsecured creditors $9.17 million.[2]

9.      Nilex USA's business is less significant than Nilex Canada's business, with sales for the ten-months ending October 31, 2022, of approximately $4.4 million.[3] A summary of Nilex USA's assets as of October 31, 2022, is as follows:

| Description | Book Value ($000s) |
|---|---|
| Inventory | 1,222 |
| Accounts receivable | 543 |
| Cash | 469 |
| Fixed Assets | 42 |
| Other Assets | 20 |
| **Total** | **2,296** |

10.     As described further below, Nilex USA is a borrower under the credit agreement with CIBC, which is secured by all of Nilex USA's assets. Nilex USA has approximately 50 unsecured creditors with claims aggregating totaling $607,000 as of November 24, 2022 (being the date of its NOI filing), excluding amounts owed to Nilex Canada, which total over $4 million. The vast majority of these unsecured creditors, by number, are located in the United States. Nilex Canada is by far Nilex USA's largest creditor representing approximately 87% of all of Nilex USA's unsecured debt.

**The Credit Agreement.**

11.     Nilex Canada and Nilex USA, as borrowers, and CIBC, as lender, entered into a Credit Agreement dated June 1, 2018, whereby CIBC made available to Nilex Canada a revolving credit facility and term loan (as amended, the "**Credit Agreement**"). The obligations under the

---

[2] This amount excludes certain off-balance sheet obligations, including amounts that may be owing for terminated leases and to terminated employees.
[3] Excluding off-balance sheet liabilities, including amounts owing to CIBC, certain employee claims and amounts owing for real property and equipment leases.

119503155.2

Credit Agreement are secured pursuant to, among other things, a general security agreement among Nilex Canada, Nilex USA and CIBC dated June 1, 2018. Nilex Canada's primary bank account is with CIBC. The Nilex Debtors operate a centralized cash management system wherein accounts receivable collections are paid into accounts, including blocked accounts, with CIBC and applied to the CIBC loan facilities (the "**Cash Management System**"). The Nilex Debtors are continuing and expect to continue to use the existing Cash Management System, including the bank accounts and arrangements presently in place with CIBC, throughout the Canadian Proceedings.  Absent the Forbearance Agreement (defined below), CIBC is not required to continue to advance any further credit facilities to the Nilex Debtors.

**Events Leading to the Commencement of the Canadian Proceeding.**

12.     The Nilex Debtors have incurred losses for several consecutive years. Losses have continued in recent years due to the Covid-19 pandemic, rising material costs, supply chain issues and slowdowns in the construction industry. The revenues of the Nilex Debtors are seasonal. Winter is usually the slowest season, with revenues gradually increasing in the spring and peaking in the summer months.

13.     Factors outside of the Nilex Debtors' control have caused liquidity challenges. Given the seasonality of their business, the Nilex Debtors were facing a liquidity crisis in October 2022 which led to the commencement of the Canadian Proceedings. In particular, the Nilex Debtors' reduced revenues during the slower winter months, rising storage costs, rising inventory costs, high operating expenses, increasing low-cost competition, decreased customer capital spending due to the COVID-19 pandemic, and increased debt servicing costs resulted in serious liquidity challenges and a default under the Credit Agreement.

119503155.2

**The Proposed Sale.**

**A.     The Sale Process.**

14.     On October 6, 2021, Nilex Canada retained Valitas to conduct a sale process (the "**Sale Process**") for the business and assets of the Nilex Debtors. A summary of the Sale Process to-date is provided below:

- the Sale Process offered for sale the Nilex Debtors' business and assets;

- Valitas compiled a comprehensive list of over 400 prospective purchasers based on geography and industry;

- Valitas selected 16 of the prospective purchasers as strong acquisition candidates based on, *inter alia*, strategic fit.  Nine of these parties confirmed their interest in the opportunity; and

- nine prospective purchasers, plus three additional strategic parties, performed due diligence, including reviewing the confidential information memorandum prepared by Valitas and information made available in a virtual data room.  A subset of the prospective purchasers also conducted site visits and attended management meetings.

15.     Valitas initially requested that prospective purchasers submit non-binding letters of intent in March 2022; however, none of the offers received were acceptable to the Nilex Debtors. At the time, the Nilex Debtors forecasted improved results for the balance of 2022 and believed that going back to prospective purchasers later in the year would result in a higher purchase price based on the forecasted improved results. Ultimately, the forecasted results did not materialize.

16.     In August 2022, Valitas re-engaged with prospective purchasers and since that time has facilitated their due diligence. Valitas provided interested parties with a template term sheet to be used as the basis for submitting non-binding letters of intent. Several non-binding letters of intent were submitted in late September 2022.

17. On or around October 8, 2022, Valitas sent interested parties a process letter, which set out the Sale Process timelines (the "**Process Letter**"). The Process Letter, specified that, *inter alia*:

- interested parties were required to submit binding offers by no later than 3:00 pm (Mountain Time) on November 8, 2022 (the "**Bid Deadline**") in the form of a template asset purchase agreement which was uploaded to the data room; and

- the Nilex Debtors' objective was to enter into a binding agreement of purchase and sale (the "**APA**") by no later than November 15, 2022.

18. The Sale Process timelines and milestones were, in part, a product of negotiations between the Nilex Debtors and CIBC pursuant to which CIBC agreed to fund these proceedings. The timelines and milestones were set out in a Forbearance Agreement dated October 17, 2022 (the "**Forbearance Agreement**") between the Nilex Debtors and CIBC, which considered that the Sale Process had been ongoing for several months. Funding under the Forbearance Agreement was tied, *inter alia*, to the Nilex Debtors advancing the Sale Process in accordance with the agreed timelines and milestones in the Forbearance Agreement.

**B.      The Sale Process Results.**

19. A summary of the Sale Process results is as follows:

- four going-concern offers were submitted;

- from the Bid Deadline until November 18, 2022, the Nilex Debtors, with the assistance of Valitas, the Proposal Trustee, the Nilex Debtors' legal counsel and the Proposal Trustee's legal counsel, worked with Terrafix Geosynthetics Inc. and Hanes Companies, Inc. (the "**Purchasers**") and their legal counsel to finalize the terms of the APA; and

- the APA was executed on November 18, 2022.

**C.      The Sale Terms.**

20. A summary of the APA is as follows:

119503155.2

| Description | Canadian Transaction | US Transaction |
|---|---|---|
| Purchasers | Terrafix Geosynthetics Inc. (the "Canadian Purchaser") | Hanes Companies, Inc. (the "U.S. Purchaser") |
| Purchased Assets | Substantially all assets of the Nilex Debtors | |
| Purchase Price | The Purchase Price has been sealed pending further order of the Alberta Court. | |
| Deposit | The Purchasers have paid a deposit representing approximately 13% of the Purchase Price, which is being held in the Proposal Trustee's trust account. | |
| Adjustment Mechanism | The estimated Purchase Price for the both the Canadian Transaction and the US Transaction is based on an Interim Statement of Adjustments.  Within 60 days following Closing of each transaction, the applicable Vendor is to provide a Final Statement of Adjustments.  The difference between the Interim Statement of Adjustments and the Final Statement of Adjustments shall be paid promptly by the applicable Vendor/Purchaser, which amount shall accrue interest at the Prime Rate plus 1%. | |
| Locations | The Canadian Purchaser will assume the leases for Nilex Canada's premises in Edmonton, Calgary and BC.  The leases for Nilex Canada's premises in Ontario and Saskatchewan will not be assumed by the Purchaser.  Nilex Canada may continue to occupy the Ontario and Saskatchewan locations for up to six months in accordance with the Transition Services Agreement ("**TSA**"). | The leases for both US locations will not be assumed by the US Purchaser.  The premises can be occupied by Nilex USA for a period of up to six months in accordance with the TSA. |
| Employees | The Purchasers intend to offer employment to the vast majority of Nilex Canada's employees in Canada and four of the eight Nilex USA employees.  Certain of the employees who are not offered employment by the Purchasers will be offered the opportunity to provide transition services to the Purchasers pursuant to the TSA.  All wages and vacation pay accrued to the Effective Date are for the account of the Nilex Debtors.  Following closing, all wages and vacation pay accruing in respect of Transferred Employees will be for the account of the Purchasers from and after the Effective Date, as will wages and vacation pay for Transition Employees pursuant to the TSA, albeit Transition Employees will remain employees of Nilex Canada or Nilex USA.  Payroll and benefits for any non-Transferred Employees and non-Transition Employees will remain the obligation of Nilex Canada or Nilex USA following the Effective Date. | |
| Representations and Warranties | Consistent with the terms of a standard insolvency transaction, i.e., on an "as is, where is" basis, with limited representations and warranties. | |
| Closing | Subject to Alberta Court approval, (obtained on November 28, 2022) closing of the Canadian Transaction is contemplated to occur on or before December 16, 2022.  The Outside Date is February 28, 2023. | Closing of the US Transaction is contemplated to occur promptly following US Court approval.  The Outside Date is February 28, 2023. |
| Material Conditions | The only material condition precedent to the Canadian Transaction is Alberta Court approval (which has happened). The closing of the Canadian Transaction is not subject to US Court | The only material condition precedent to the US Transaction is approval of the Canadian transaction by the Alberta Court and the US Court. |

8

| Description | Canadian Transaction | US Transaction |
|---|---|---|
|  | approval and/or completion of the US Transaction. |  |

**D.     Transition Services Agreement.**

21.     Pursuant to the APA, the execution of the TSA by the Nilex Debtors and the Purchasers is a condition to closing of the Canadian Transaction and the US Transaction.  The purpose of the TSA is for the Nilex Debtors to maintain in good standing, during these proceedings, certain contracts and real property lease agreements until those locations can be vacated, at which time those leases are intended to be disclaimed by the Nilex Debtors. Also pursuant to the TSA, certain employees will remain employees of the Nilex Debtors during the transition period, but will provide assistance to the Purchasers as it relates to transition issues. As part of the TSA, the Purchasers are required to fund any costs incurred by the Nilex Debtors in providing the Transition Services (as defined in the TSA). The TSA also requires that the Purchasers fund a deposit equal to one month of the estimated transition costs. The TSA has a term of up to six months.

**Default Under the CIBC Credit Agreement**.

22.     The Credit Agreement provides that the CIBC Debt becomes immediately due and payable on the occurrence of an Event of Default (as defined in the Credit Agreement). The Nilex Debtors are in default under the Credit Agreement and, accordingly, on September 15, 2022, CIBC issued a Notice of Intention to Enforce Security pursuant to section 244 of the BIA. On October 17, 2022, CIBC and the Nilex Debtors entered into the Forbearance Agreement, which among other things, allows the Nilex Debtors, subject to the terms and conditions of the Forbearance Agreement, to continue to access the credit facilities under the Credit Agreement and to continue to use the Cash Management System to meet working capital requirements while the Nilex Debtors carry out the Sale Process and the Canadian Proceedings. CIBC has also agreed to temporarily

119503155.2

forbear from enforcing its rights, subject to the terms and conditions of the Forbearance Agreement. Pursuant to the Forbearance Agreement, CIBC will apply the Nilex Debtors' post-filing receipts against their pre-filing indebtedness and new advances by CIBC to the Nilex Debtors during the Canadian Proceeding are to be secured by the Lender Priority Charge (as defined below).

23.     As a result of CIBC defaults and other issues, Nilex Canada decided to initiate restructuring proceedings by filing an NOI on October 27, 2022, while Nilex USA filed an NOI on November 24, 2022. The NOI filings were intended to provide the Nilex Debtors with the stability required to complete the Sale Process and the going concern transaction identified therein in the near term. The Sale Process was approved by the Alberta Court on November 8, 2022 and on November 28, 2022, the Alberta Court, among other things, approved the transaction contemplated by the APA described above. A motion seeking recognition of the order of the Alberta Court, among other things, approving a sale of the Nilex USA assets, has been filed herewith.

**The Canadian Proceedings.**

24.     The BIA governs the NOI process in Canada which includes the appointment of a Proposal Trustee. The BIA is a federal statute that governs a number of different insolvency proceedings to which individuals and corporations are subject, including bankruptcies, receiverships, and proposals proceedings. An NOI commences a proceeding under the BIA that allows financially troubled corporations the opportunity to restructure their affairs. It is often the first stage of a debtor in possession restructuring process under the BIA, which allows a company to restructure its financial affairs through a formal proposal to creditors (similar to filing a plan of arrangement and compromise). The NOI proceeding and eventual proposal provides an

10

opportunity for a company to avoid forced liquidation in bankruptcy, permits an insolvent company to sell assets, subject to court approval, and allows creditors to receive compensation for amounts owing to them.

25.     A Proposal Trustee is an independent licensed insolvency trustee who is appointed by the "Official Receiver" (which is a representative of the Office of the Superintendent in Bankruptcy in Canada) to assist the company with the filing of its NOI and/or proposal and to monitor the debtor company's ongoing operations during the NOI proceeding. The Proposal Trustee's duties include monitoring the ongoing financial and other activities of a debtor company, reporting to the court on any major events that might impact the viability of the company, assisting the company in the preparation of its proposal, notifying the creditors of any meetings of creditors and tabulating the votes at these meetings.

26.     On October 27, 2022, Nilex Canada filed its NOI with the Official Receiver under section 50.4(1) of the BIA. The NOI was filed in consultation with the Nilex Debtors' professional advisors in order to try to restructure or sell the Nilex Debtors as a going concern for the benefit of their stakeholders after it was determined that a transaction for the Nilex Debtors could not be completed outside of a formal restructuring proceeding. Once the Official Receiver, accepted Nilex Canada's NOI filing, it issued a Certificate of Filing of a Notice of Intention to Make Proposal ("**Certificate**") triggering a statutory stay of proceedings, as set out in the BIA, for an initial 30 days (often referred to as the "**Initial Stay Period**") to enable Nilex Canada to take steps to prepare and file a proposal. The Certificate designated KSV as the Licensed Insolvency Trustee for Nilex Canada. The Initial Stay Period is subject to extension upon application to the Court for additional periods, not exceeding 45 days for any individual extension, to a maximum of five months following the Initial Stay Period, to allow Nilex Canada to file a proposal.

119503155.2

27.     On October 31, 2022, Nilex Canada filed in the Canadian Proceeding an application (approving extension of time to file a proposal, an administration charge, and other relief) (the "**Application**").  The Application sought, *inter alia*, a 45-day extension of the initial 30-day deadline to file a Proposal, a grant of certain charges (as described below), approval of continued use of Nilex Canada's cash management system, and approval of the on-going Sale Process. After a hearing held on November 8, 2022, the Alberta Court granted the Application and entered its Order (approving extension of time to file a proposal, administration charge, and other relief) (the "**Proposal Order**"), attached as **Exhibit 1**. Pursuant to the Proposal Order, among other things, the Alberta Court extended the Initial Stay Period to January 10, 2022.

28.     As specified in the Proposal Order, the following four charges (the "**Charges**") were granted against the property of Nilex Canada, with priority over all other secured claims:

- An Administrative Charge for the benefit of the Nilex Debtors' professionals, not to exceed an aggregate amount of $350,000 (CAN). *Id.* at ¶¶ 6 and 7;

- A Lender Priority Charge, not to exceed an aggregate principal amount of $20,000,000 (CAN), plus interest, fees and expenses, as security for any advances made under the Credit Agreement after the filing of the NOI. *Id.* at ¶¶ 11 and 12;[4]

- A "D&O Charge" for purposes of indemnifying directors and officers against obligations and liabilities that they may incur in their role as directors and officers after the filing of the NOI, not to exceed an aggregate amount of $925,000 (CAN). *Id.* at ¶¶ 15 and 16;

- A "KERP Charge" pursuant to an approved key employee retention plan, not to exceed an aggregate amount of $800,000 (CAN). *Id.* at ¶¶ 18, 19 and 20.

29.     CIBC is a party to the Canadian Proceedings and did not object to the forgoing charges.

---

[4] The Lender Priority Charge secures all new advances made by CIBC under the Credit Agreement made after the filing of the NOI, while post-filing receipts are first used to pay down the debt that was owed to CIBC as of the filing date.

119503155.2

30.     On November 24, 2022, Nilex USA filed its NOI with the Official Receiver under section 50.4(1) of the BIA. The NOI was filed in consultation with Nilex Debtors' professional advisors for the primary purpose of completing the transaction that resulted from the Sale Process. As with Nilex Canada, once accepted by the Official Receiver, a certificate was issued thereby triggering a statutory Stay Period for an initial 30-days (the "**Nilex USA Initial Stay Period**"). The Certificate designated KSV as the Licensed Insolvency Trustee for Nilex USA. The Nilex USA Initial Stay Period is subject to extension upon application to the Court, as discussed in detail earlier.

31.     On November 21, 2022, Nilex Canada filed in the Canadian Proceeding an application (sale approval and vesting order, procedural consolidation and ancillary relief) (the "**Second Application**").  Among other things, the Second Application sought orders from the Alberta Court (a) extending the time to file a proposal for the Nilex Debtors to and including February 7, 2022 (thereby extending the Nilex USA Initial Stay Period); (b) extending to Nilex USA certain relief granted to Nilex Canada in the Proposal Order, including the granting of the Charges over the assets and property of Nilex USA; (c) procedurally (but not substantively) consolidating the Nilex Canada and Nilex USA NOI proceedings; (d) approving the purchase and sale transaction (the "**Transaction**") contemplated in the asset purchase agreement dated November 18, 2022 between the Nilex Debtors as vendors and the Purchasers; (e) authorizing the Proposal Trustee to act as foreign representative in respect of the Nilex Debtors, or either one of them, for the purpose of having the Canadian Proceedings recognized in the United States of America; and (f) authorizing the Proposal Trustee to make an interim distribution or distributions to CIBC.  After a hearing held on November 28, 2022, the Alberta Court granted the relief requested in the Application, entering certain Orders including an Order (procedural consolidation

13

and ancillary relief) ("**Ancillary Order**"), attached as **Exhibit 2**. Pursuant to the Ancillary Order, the Alberta Court extended the Nilex USA Initial Stay Period and further extended the Initial Stay Period of Nilex Canada to February 7, 2023. The extension of the Nilex USA Initial Stay Period and the Initial Stay Period for Nilex Canada will continue to prohibit any proceeding or enforcement process against the Nilex Debtors or their assets. *Id.* at ¶ 3. Further, all rights and remedies of any entity, whether judicial or extra-judicial, are stayed and suspended against the Nilex Debtors and their assets. *Id.*

**The Proposal Trustee's Intended Actions.**

32.     The Proposal Trustee intends to continue to monitor the business of the Nilex Debtors and act in accordance with the powers and obligations set forth in the BIA and the orders of the Alberta Court.  One of the Orders granted as part of the Second Application on November 28, 2022 was an Order (sale approval and vesting) (the "**Approval and Vesting Order**"), attached as **Exhibit 3**. A motion seeking recognition of the Approval and Vesting Order in respect of Nilex USA is being filed simultaneously with this Petition.

33.     Also on November 28, 2022, the Alberta Court entered an Order (sealing confidential appendices) (the "**Sealing Order**"), attached as **Exhibit 4**. The Nilex Debtors and the Purchasers agreed that certain terms of the APA, including the Purchase Price, as defined therein, were to be kept confidential. As a result, the APA has been filed under seal in the Canadian Proceedings.

**The Nilex Debtors' Center of Main Interests.**

**A.     The Location of Those Who Manage Nilex USA.**

34.     Management of each of the Nilex Debtors occurs almost entirely in Edmonton. All executive level and substantial decisions are made in Canada.

14

119503155.2

35.     Nilex USA cannot operate independently of Nilex Canada. The Nilex Debtors' business is fully integrated. The directors of Nilex USA and Nilex Canada are the same.  The senior management team of the Nilex Debtors, including the President and CEO, Vice-President of Finance, Director of Supply Chain, Director of Human Resources, Director of Technical Services (collectively, the "**Management Team"**) are all located in Canada. The Management Team develops all corporate strategies for the Nilex Debtors. Additionally, almost all members of the Management Team are residents of Edmonton and perform their duties out of the Edmonton head office. The Management Team reports to a board of directors that effectively controls the Nilex Debtors. All directors of the Nilex Debtors reside in Canada. The only managers of the Nilex Debtors who are not Canadian residents are Alan Strecker (Regional Sales Manager) and Christy Burton (Office Manager), both of whom report to the Sales Director in Canada, who reports to the President and CEO, Trevor Derksen, based in Edmonton.

36.     All capital allocation decisions for the Nilex Debtors are directed by the Management Team and approved by the Management Team. The leaders of the business units in all jurisdictions execute the decisions made by the Management Team in Edmonton. Trevor Derksen, the President and CEO of Nilex Canada, is involved in all major negotiations with large clients regardless of the business entity that serves those clients or the jurisdiction in which their projects are located. The material terms of all major contracts require approval by the Management Team, as do all major spending decisions. Furthermore, most major clients in the United States are supported by a Sales Manager in Colorado and the Sales Director, who is based in British Columbia.

37.     The Nilex Debtors use the Cash Management System to fund operations. The books and records of the Nilex Debtors are prepared and maintained in Edmonton. Jeff Allen, Vice-

119503155.2

President of Finance, has responsibility for the Nilex Debtors' accounting and all administrative

oversight. Payroll services for the Nilex Debtors are administered by a payroll professional of

Nilex Canada, located in the Edmonton Head Office.

38.     The following policies, procedures, operating manuals and practices are developed,

updated and administered in the Edmonton head office and are applied across the Nilex Debtors:

- human resources — including employee policies and procedures, benefits, wellness, confidentiality and privacy policies;
- corporate accounting policies;
- code of ethics;
- corporate standards;
- information and telecommunications policies and procedures;
- marketing and communications policies and procedures; and
- delegation of authority matrix.

39.     The following programs are created and refined in Canada at the Edmonton head

office:

- health, safety and environment and quality control functions of the Nilex Debtors;
- all corporate and employee training for all the employees of the Nilex Debtors;
- all training and development programs for operational personnel throughout the Nilex Debtors; and
- all leadership development programs.

40.     Finally, the Proposal Trustee and Foreign Representative, a Canadian entity

appointed by a Canadian court, is also based in Canada.

**B.     The Location of Nilex USA's Business.**

41.     With respect to the location of Nilex USA, the mind and management of Nilex USA

is in Edmonton, Alberta. As to the location of Nilex USA's assets, this factor also favors Canada.

The Nilex Debtors utilize the Cash Management System pursuant to which funding is determined

and managed from the head office in Alberta. Nilex USA maintains a bank account in Canada and

its treasury management function is centralized at the head office in Alberta.

42.     The principal secured creditor of the Nilex Debtors is CIBC. The Nilex Debtors are both borrowers under the Credit Agreement, which is governed by Canadian Law:

- the availability of liquidity to the Nilex Debtors under the CIBC facility is derived from combining the net borrowings of Nilex Canada and net cash from Nilex USA against the borrowing base calculated under the Credit Agreement;

- all disbursements paid out by the Nilex Debtors must be signed or electronically released by a member of the treasury team, including the Vice-President of Finance, from the Edmonton office (except for petty cash disbursements); and

- while some cash receipts are deposited at the locations where they are received, they are all reported to the treasury group in the Edmonton office and then administered as part of the Cash Management System.

43.     The Nilex Debtors' obligations under the Credit Agreement are secured pursuant to, among other things, a general security agreement among Nilex Canada, Nilex USA, and CIBC dated June 1, 2018 (the "GSA"). The GSA grants CIBC security over all present and after acquired personal property of the Nilex Debtors. CIBC is the first lien secured creditor of the Nilex Debtors. The only other significant indebtedness of Nilex USA is owed to Nilex Canada pursuant to intercompany transactions.

44.     In addition, Nilex Canada, which is also located in Canada, is Nilex USA's largest unsecured creditor.

45.     As indicated above, Nilex USA's principal creditor relationship is with CIBC. As specified in the Credit Agreement, that relationship is governed by Canadian law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 2, 2022.                           s/*Robert Kofman*
                                                        Robert Kofman, Managing Director
                                                        KSV Restructuring Inc.

18

Clerk's stamp:

| | |
|---|---|
| COURT/ESTATE FILE NUMBER | 24-2878531 |
| COURT | COURT OF KING'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | EDMONTON |
| | IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED |
| APPLICANT: | NILEX INC. |
| DOCUMENT | **ORDER (approving extension of time to file a proposal, administration charge, and other relief)** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | BLAKE, CASSELS & GRAYDON LLP 3500, 855 – 2nd Street S.W. Calgary, AB  T2P 4J8 |
| | Attn:   Kelly Bourassa / Alexia Parente Telephone: 403-260-9697 / 416-863-2417 Facsimile:  403-260-9700 E-mail: kelly.bourassa@blakes.com / alexia.parente@blakes.com |
| | File Ref.:  99580/8 |

**DATE ON WHICH ORDER WAS PRONOUNCED:**  November 8, 2022

**LOCATION WHERE ORDER WAS PRONOUNCED:** Edmonton, Alberta (via Webex)

**NAME OF JUSTICE WHO MADE THIS ORDER:**   The Honourable Justice J.S. Little

    **UPON THE APPLICATION** by Nilex Inc. (the "**Company**"), for an order, among other things: (a) extending the time for the Company to file a proposal pursuant to the *Bankruptcy and Insolvency Act*, RSC 1985 c B-3 (the "**BIA**"); (b) approving an Administration Charge (defined below); (c) approving the Sale Process (defined below) and its continuation; (d) approving the continued use of the Cash Management System (defined below); and (e) approving the distribution of the Garnished Funds (defined below) out of Court to the Company and directing any future Garnished Funds to be paid to the Company;

**Exhibit 1**

**AND UPON HAVING READ** the Application, the Affidavit of Jeff Allen sworn October 31, 2022 (the "**First Allen Affidavit**"), the First Report of KSV Restructuring Inc. in its capacity as proposal trustee of the Company (in such capacity, the "**Proposal Trustee**") dated October 31, 2022 (the "**First Report**"), and the Affidavit of Service of Lindsay Farr sworn November 3, 2022;

**AND UPON HEARING** the submissions of counsel for the Company, the Proposal Trustee, the Canadian Imperial Bank of Commerce ("**CIBC**"), and such other counsel in attendance;

**IT IS HEREBY ORDERED AND DECLARED THAT:**

**SERVICE**

1.      Service of notice of this Application and supporting materials is hereby declared to be good and sufficient, no other person is required to have been served with notice of this application, and time for service of this application is abridged to that actually given.

**EXTENSION OF TIME TO FILE A PROPOSAL**

2.      Pursuant to Section 50.4(9) of the BIA, the time for the Company to file a proposal is hereby extended to January 10, 2023 (as that date may be extended by further order of the Court, the "**Proposal Extension Date**").

**NO INTERFERENCE WITH RIGHTS**

3.      Until and including the Proposal Extension Date, no individual, firm, corporation, governmental body, or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") shall accelerate, suspend, discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Company, or take any further action to issue or enforce any garnishee summons, except with the written consent of the Company and the Proposal Trustee, or leave of this Court.

**CONTINUATION OF SERVICES**

4.      Until and including the Proposal Extension Date, all Persons having:

(a)      statutory or regulatory mandates for the supply of goods and/or services; or

(b)     oral or written agreements or arrangements with the Company, including without limitation all purchase orders, supply agreements, computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Company;

are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Company or exercising any other remedy provided under such agreements or arrangements. The Company shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the usual prices or charges for all such goods or services received after the date of this Order are paid by the Company in accordance with the payment practices of the Company, or such other practices as may be agreed upon by the supplier or service provider and each of the Company and the Proposal Trustee or as may be ordered by this Court.

**ADMINISTRATION CHARGE**

5.      The Proposal Trustee, counsel to the Proposal Trustee, and counsel to the Company (collectively, the "**Administrative Professionals**") shall be paid their reasonable fees and disbursements, in each case, incurred at their standard rates and charges, by the Company as part of the costs of these proceedings. The Company is hereby authorized and directed to pay the accounts of the Administrative Professionals on a bi-weekly basis, or as they may otherwise agree.

6.      The Administrative Professionals shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on all of the Company's present and future assets, undertakings and property of every nature and kind whatsoever and wherever situate, including all proceeds thereof (collectively, the "**Property**"), which charge shall not exceed an aggregate amount of $350,000 (before GST), as security for payment of their respective professional fees and disbursements incurred at their normal rates and charges, both before and after the making of this Order, in respect of this proceeding.

7.      The Administration Charge shall have the priority set out in paragraphs 21 and 23 hereof.

**CASH MANAGEMENT SYSTEM AND LENDER PRIORITY CHARGE**

8.      The Company's execution and performance under the forbearance agreement dated as of October 17, 2022 between the Company and CIBC (among others), as may be amended from time to time (the "**Forbearance Agreement**") is hereby approved.

9.      The Company shall be entitled to continue to utilize the credit facilities (the "**Cash Management System**") granted by CIBC under the Credit Agreement, as defined and described in the First Allen Affidavit (the "**Credit Agreement**"). For greater certainty, (i) the Company is authorized to borrow, repay and re-borrow such amounts from time to time as the Company may consider necessary or desirable under the Credit Agreement, subject to the terms and conditions of the Forbearance Agreement; and (ii) CIBC is authorized to apply receipts and deposits made to the Company's bank accounts, whether directly or through blocked accounts, against the indebtedness of the Company to CIBC in accordance with the Forbearance Agreement, whether such indebtedness arose before or after the date of this Order; provided, however that no advances made by CIBC to the Company under the Credit Agreement on or after the date hereof shall be used to pay the Company's obligations that were owing to CIBC prior to the date hereof.

10.     The Cash Management System will be governed by the terms of the Credit Agreement and the Forbearance Agreement and such other documentation applicable to the Cash Management System. CIBC shall be an unaffected creditor in these proceedings, and the rights and remedies of CIBC shall be unaffected by paragraphs 3 and 4 of this Order or any other stay of proceedings that may be granted in these proceedings.

11.     CIBC shall be entitled to the benefit of and is hereby granted a charge (the "**Lender Priority Charge**") on the Property, which charge shall not exceed an aggregate principal amount of 20,000,000 plus interest, fees and expenses, as security for any advances made under the Credit Agreement from and after the filing of the NOI.

12.     The Lender Priority Charge shall have the priority set out in paragraphs 21 and 23 hereof.

13.     The payments made by the Company pursuant to this Order, the Credit Agreement and the Forbearance Agreement, and the granting of the Lender Priority Charge shall not constitute or be deemed to be a preference, fraudulent conveyance or transfer at undervalue or other challengeable or reviewable transaction under the BIA or any

applicable law, nor shall they constitute oppressive or unfairly prejudicial conduct under any applicable law. The rights of CIBC under this Order, including without limitation the Lender Priority Charge, shall be enforceable in any bankruptcy, interim receivership, or receivership or in any proceedings under the *Companies' Creditors Arrangement Act* (Canada) of the Company or Property.

**D&O CHARGE**

14.     The Company shall indemnify the directors and officers against obligations and liabilities that they may incur in their role as directors and officers after the filing of the NOI, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's and officer's gross negligence or wilful misconduct.

15.     Each of the directors and officers of the Company shall be entitled to the benefit of and are hereby granted a charge (the "**D&O Charge**") on all of the Property, which charge shall not exceed an aggregate amount of $925,000, as security for the indemnity provided in this Order.

16.     The D&O Charge shall have the priority set out in paragraphs 21 and 23 hereof.

17.     Notwithstanding any language in any applicable insurance policy to the contrary:

(a)     no insurer shall be entitled to be subrogated to or claim the benefit of the D&O Charge; and

(b)     the Company's directors and officers shall only be entitled to the benefit of the D&O Charge to the extent that they do not have coverage under any directors' and officers' insurance policy.

**KERP**

18.     The Company's key employee retention plan (the "**KERP**") described in the First Report is hereby approved and the Company is authorized and directed to make the payments contemplated thereunder should the beneficiaries become entitled thereto in accordance with the terms and conditions of the KERP.

19.     The beneficiaries of the KERP are hereby granted a charge (the "**KERP Charge**") on the Property which charge shall not exceed an aggregate amount of $800,000, as security for all obligations under the KERP.

20.     The KERP Charge shall have the priority set out in paragraphs 21 and 23 hereof.

**PRIORITY OF CHARGES**

21.     The priorities of the Administration Charge, the Lender Priority Charge, the D&O Charge, and the KERP Charge, as between them, shall be as follows:

   (a)     First – Administration Charge;

   (b)     Second –Lender Priority Charge;

   (c)     Third – D&O Charge; and

   (d)     Fourth – KERP Charge.

   (collectively, the "**Charges**").

22.     The filing, registration or perfection of the Charges shall not be required, and the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

23.     The Charges shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, deemed trusts, liens, charges and encumbrances, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person.

24.     Except as otherwise expressly provided for herein, or as may be approved by this Court, the Company shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Company also obtains the prior written consent of the Proposal Trustee and the other beneficiaries of the Charges affected thereby, or further order of this Court.

**SALE PROCESS**

25.    The sale process (the "**Sale Process**") commenced prior to the filing of the notice of intention to file a proposal by the Company in this proceeding, as described in the First Report, is commercially reasonable and is hereby ratified and approved.

26.    The Company, with the assistance of the Proposal Trustee and Valitas Capital Partners, is hereby authorized and directed to continue the Sale Process, and do all things reasonably necessary to conduct and give full effect to the Sale Process and carry out the obligations thereunder, including taking any additional steps or executing additional documents as may be necessary or desirable in order to carry out and complete the Sale Process and a transaction or transactions thereunder.

27.    The Company is authorized to apply to this Honourable Court for advice and directions in connection with the Sale Process.

**FUNDS PAID OUT OF COURT**

28.    The Clerk of the Court of the King's Bench of Alberta is hereby directed to release to the Company all funds currently being held by it, or which may be paid into Court subsequent to this Order, pursuant to garnishee summons issued in Court of King's Bench File Number 1903-07838 (the "**Garnished Funds**").

29.    The Company shall deposit the Garnished Funds in the Company's accounts with CIBC and they shall be applied in accordance with the provisions of the Credit Agreement and the Cash Management System to reduce the amounts outstanding to CIBC as first priority secured creditor.

30.    Any Person who has received a garnishee summons directing it to pay funds to the Clerk of the Court is hereby directed to pay any such funds directly to the Company to be deposited by the Company into its accounts with CIBC and applied in accordance with the provisions of the Credit Agreement and the Cash Management System.

**SEALING**

31.    Notwithstanding Division 4 of Part 6 of the *Alberta Rules of Court*, Alta Reg 124/2010, confidential appendix 1 ("**Confidential Appendix**") of the First Report shall until further

Order of this Honourable Court, be sealed on the Court file and kept confidential to be shown only to a Justice of the Court of King's Bench of Alberta, and accordingly, shall be filed with the Clerk of the Court who shall keep the Confidential Appendices in a sealed envelope attached to a notice that sets out the style of cause of these proceedings and states:

THIS ENVELOPE CONTAINS CONFIDENTIAL MATERIALS FILED IN COURT FILE NO. 24-2878531. THE CONFIDENTIAL MATERIALS ARE SEALED PURSUANT TO THE SEALING ORDER ISSUED BY THE HONOURABLE JUSTICE C.M. JONES ON NOVEMBER 9, 2022.

32.    The Company and the Proposal Trustee are empowered and authorized, but not directed, to provide the Confidential Appendix (or any portion thereof, or information contained therein) to any interested party, entity or person that the Company or Proposal Trustee considers reasonable in the circumstances, subject to confidentiality arrangements satisfactory to the Company or the Proposal Trustee.

33.    Any party may apply to set aside paragraph 31 of this order upon providing the Company, Proposal Trustee and all other interested parties with 5 days notice of such application.

**MISCELLANEOUS MATTERS**

34.    Notwithstanding Rule 6.11 of the *Alberta Rules of Court*, unless otherwise ordered by this Court, the Proposal Trustee will report to the Court from time to time, which reporting is not required to be in affidavit form and shall be considered by this Court as evidence. The Proposal Trustee's reports shall be filed by the Clerk of the Court notwithstanding that they do not include an original signature.

35.    This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in any of its provinces or territories or in any foreign jurisdiction, to act in aid of and to be complimentary to this Court in carrying out the terms of this Order, to give effect to this Order, and to assist the Proposal Trustee and its agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such order and to provide such assistance to the Proposal Trustee, as an officer of the Court, as may be necessary or desirable to give effect to this Order or to assist the Proposal Trustee and its agents in carrying out the terms of this Order.

36.     Each of the Company or the Proposal Trustee shall be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

37.     Any interested party (including the Proposal Trustee) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

**SERVICE OF ORDER**

38.     Service of this Order shall be deemed good and sufficient:

(a)     by serving same on the persons who were served with notice of this Application and any other parties attending or represented at the hearing of the Application; and

(b)     by posting a copy of this Order on the Proposal Trustee's website at: Nilex Inc. (ksvadvisory.com).

39.     Service of this Order on any other person is hereby dispensed with.

40.     Service of this Order may be effected by facsimile, electronic mail, personal delivery or courier. Service is deemed to be effected the next business day following transmission or delivery of this Order.

_____
                Justice of the Court of King's Bench of Alberta

| | |
|---|---|
| COURT FILE NUMBER | 24-2878531 |
| COURT | COURT OF KING'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | EDMONTON |
| | IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED |
| APPLICANTS | NILEX INC. and NILEX USA INC. |
| DOCUMENT | **ORDER (procedural consolidation and ancillary relief)** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | **Blake, Cassels & Graydon LLP**<br>Barristers and Solicitors<br>3500 Bankers Hall East Tower<br>855 – 2 Street SW<br>Calgary, Alberta  T2P 4J8<br><br>Attention:   Kelly Bourassa / Alexia Parente<br>Telephone:  403-260-9697 / 416-863-2417<br>Email:<br>kelly.bourassa@blakes.com /<br>alexia.parente@blakes.com<br><br>Fax No.:   403-260-9700<br>File Ref:   99580/8 |

I hereby certify this to be a true copy of

the original   Procedural order

Dated this  30th day of November 2022

_____

for Clerk of the Court

Clerk   BANKRUPTCY AND INSOLVENCY

FILED

Nov 30, 2022

Edmonton

**DATE ON WHICH ORDER WAS PRONOUNCED:**     November 28, 2022

**LOCATION OF HEARING:**     Calgary, Alberta (via Webex)

**NAME OF JUDGE WHO MADE THIS ORDER:**     The Honourable Justice M.H. Hollins

    **UPON THE APPLICATION** by Nilex Inc. and Nilex USA Inc. (each a "**Company**" and, collectively, the "**Companies**") for an order, among other things: (i) procedurally consolidating the bankruptcy proceeding of Nilex Inc. (Estate No. 24-2878531) and Nilex USA Inc. (Estate No. 24-2887527) (each individually, a "**Proceeding**" and together, the "**Consolidated Proceeding**") for administrative purposes; (ii) extending to Nilex USA Inc. certain relief granted previously to Nilex Inc.; (iii) ordering the style of cause in the within proceedings be amended to include Nilex USA Inc. as an applicant; (iv) authorizing KSV Restructuring Inc. (the "**Proposal Trustee**"), to act as the foreign representative (in such capacity, the "**Foreign Representative**") in respect of the Companies for the purpose of having these Proceedings recognized and approved in the United States of America pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C.§§ 101-

**Exhibit 2**

1532; and (v) authorizing the Proposal Trustee to make an interim distribution to Canadian Imperial Bank of Commerce ("**CIBC**");

**AND UPON HAVING READ** the Application, the Affidavit of Jeff Allen sworn on November 21, 2022, the second report of the Proposal Trustee dated November 21, 2022, the confidential appendices thereto, the Affidavit of Service of Lindsay Farr sworn November 24, 2022, and such other material in the pleadings and proceedings as deemed necessary;

**AND UPON HEARING** the submissions of counsel for the Companies, the Proposal Trustee, CIBC and such other counsel in attendance;

**IT IS HEREBY ORDERED AND DECLARED THAT:**

**EXTENSION OF TIME TO FILE A PROPOSAL**

1. Pursuant to Section 50.4(9) of the BIA, the time for the Companies to file their respective proposals is hereby extended to February 7, 2023 (as that date may be extended by further order of the Court).

**PROCEDURAL CONSOLIDATION**

2. The bankruptcy estates of the Proceedings shall, subject to further order of the Court, be procedurally consolidated into one proceeding and shall continue under Estate No. 24-2878531 (the "**Consolidated Proceeding**").

3. The procedural consolidation of the Proceedings pursuant to this Order shall not:

   (a) affect the legal status or corporate structure of the Companies; or

   (b) cause either Company to be liable for any claim for which they are otherwise not liable, or cause either Company to have an interest in an asset to which it otherwise would not have.

4. The Proceedings are not substantively consolidated, and nothing in this Order shall be construed to that effect.

5.    A copy of this Order shall be filed by the Companies in the Court file for each of the Proceedings but any subsequent document required to be filed hereafter will only be required to be filed in the Consolidated Proceeding.

6.    For avoidance of doubt, any motion, application or action, including the herein application, in respect of the Companies shall be brought and filed in the Consolidated Proceeding and if so brought and filed it shall be deemed brought and filed in each of the Proceedings as appropriate, without prejudice to any rules of court or otherwise that are applicable.

7.    The Style of Cause in the within proceedings is hereby amended and shall be assigned to the Consolidated Proceeding:

>    IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED

> APPLICANTS        NILEX INC. and NILEX USA INC.

8.    The relief granted by the Honourable Justice J.S. Little of this Court on November 8, 2022 (the "**November 8 Order**"), among other things, (i) approving a sale process as described in the Proposal Trustee's first report to the Court dated October 31, 2022; (ii) expanding the stay of proceedings under the *Bankruptcy and Insolvency Act* RSC 1985, c B-3, as amended, as set out in paragraphs 3 and 4 of the November 8 Order; and (iii) granting the Administration Charge, Lender Priority Charge, D&O Charge and KERP Charge (each as defined in the November 8 Order) and, in respect of the Charges (as defined in the November 8 Order) ordering that each shall constitute a charge on the Property (as defined in the November 8 Order), is hereby extended to Nilex USA Inc. and all of its present and future assets, undertakings and property of every nature and kind whatsoever and wherever in situate, including all proceeds thereof, in the same manner as set out in the November 8 Order.

**FOREIGN REPRESENTATIVE**

9.    The Proposal Trustee is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for recognition of this Order (and other orders in the Consolidated Proceeding) and for assistance in carrying out the terms

of these orders and the Proposal Trustee is authorized and empowered to act as the Foreign Representative of the Companies or either Company in respect of the Consolidated Proceeding or either Proceeding for the purpose of having the Consolidated Proceeding or either Proceeding recognized in a jurisdiction outside Canada, including in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § § 101-1532.

**INTERIM DISTRIBUTION**

10.     The Proposal Trustee is hereby authorized, at such time as it determines appropriate, to make an interim distribution or interim distributions to CIBC from amounts received from the Transaction up to the full amount of the Company's indebtedness to CIBC, as set out in the Second Report, subject to the retention of amounts for any priority claims. Such interim distribution or interim distributions shall be free and clear of all claims and encumbrances and shall be binding on any trustee in bankruptcy or receiver that may be appointed in respect of either of the Companies and shall not be void or voidable by creditors of the Companies, nor shall any such interim distribution constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall any such interim distribution constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

11.     The interim distribution or interim distributions authorized in paragraph 10 of this Order shall be without prejudice to any rights of subrogation or marshaling that any subordinate creditors may have to amounts received from the Transaction following the interim distribution or interim distributions to CIBC.

**MISCELLANEOUS MATTERS**

12.     The Companies, the Proposal Trustee, and any other interested party shall be at liberty to apply for further advice, assistance, and directions as may be necessary in order to give full force and effect to the terms of this Order and to assist and aid the parties in closing the Transaction.

13. This Honourable Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, or in any of its provinces or territories, or in any foreign jurisdiction including specifically, the United States of America, to act in aid of and to be complimentary to this Court in carrying out the terms of this Order and other orders in the Consolidated Proceeding. All courts, tribunals regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Companies or the Proposal Trustee, as an officer of this Court and Foreign Representative, as may be necessary or desirable to give effect to this Order and other orders in the Consolidated Proceeding, to grant representative status to the Proposal Trustee in any foreign proceeding of the Companies or either Company, or to assist the Companies and the Proposal Trustee and their agents in carrying out the terms of this Order and other orders in the Consolidated Proceeding.

**SERVICE OF ORDER**

14. Service of this Order shall be deemed good and sufficient:

    (i)     by serving same on the persons who were served with notice of this Application and any other parties attending or represented at the hearing of the Application; and

    (ii)    by posting a copy of this Order on the Proposal Trustee's website at: https://www.ksvadvisory.com/experience/case/nilex-inc.

15. Service of this Order on any other person is hereby dispensed with.

16. Service of this Order may be effected by facsimile, electronic mail, personal delivery or courier. Service is deemed to be effected the next business day following transmission or delivery of this Order.

_____

Justice of the Court of King's Bench of Alberta

| | |
|---|---|
| COURT FILE NUMBER | 24-2878531 |
| COURT | COURT OF KING'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | EDMONTON |
| | IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED |
| APPLICANTS | NILEX INC. and NILEX USA INC. |
| DOCUMENT | **ORDER (sale approval and vesting)** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | **BLAKE, CASSELS & GRAYDON LLP** Barristers and Solicitors 3500 Bankers Hall East 855 – 2nd Street SW Calgary, Alberta  T2P 4J8 |

**FILED**
Nov 30, 2022
A.E
Edmonton
by email

I hereby certify this to be a true copy of
the original  Sale Approval & Vesting Order

Dated this  30th  day of  November 2022

_____
for Clerk of the Court

Attention:    Kelly Bourassa / Alexia Parente
Telephone:   403-260-9697 / 416-863-2417
Email:        kelly.bourassa@blakes.com /
              alexia.parente@blakes.com

Fax No.:     403-260-9700
File Ref.:    99580/8

**DATE ON WHICH ORDER WAS PRONOUNCED:**      November 28, 2022

**LOCATION OF HEARING:**                      Calgary, Alberta (via Webex)

**NAME OF JUDGE WHO MADE THIS ORDER:**        The Honourable Justice M.H. Hollins

UPON the application of Nilex Inc. and Nilex USA Inc. (the "**Companies**") for an order, among other things: (i) approving the sale transaction (the "**Transaction**") contemplated by an asset purchase agreement dated November 18, 2022 (the "**APA**") between the Companies, as vendors, and Terrafix Geosynthetics Inc. and Hanes Companies, Inc. (the "**Purchasers**"), and appended as confidential appendix "3" (the "**Confidential Appendix**"), to the second report of KSV Restructuring Inc. in its capacity as proposal trustee ("**Proposal Trustee**"), dated November 21, 2022 (the "**Second Report**"); (ii) approving the transition services agreement attached to the APA as Exhibit "E"; and (iii) vesting in the Purchasers the Companies' right, title, and interest in and to the assets described in the APA (the "**Purchased Assets**") in accordance with the terms of the APA;

**Exhibit 3**

**AND UPON HAVING READ** the Application, the affidavit of Jeff Allen sworn on November 21, 2022 (the "**Second Allen Affidavit**"), the Second Report, the Confidential Appendix and other confidential appendices thereto, the Affidavit of Service of Lindsay Farr sworn November 24, 2022, and such other material in the pleadings and proceedings as deemed necessary;

**AND UPON NOTING** in the Second Report that, among other things, in the Proposal Trustee's view, the Sale Process was commercially reasonable, the value of the Transaction was the highest of any going concern offers received in the Sale Process and materially exceeds the liquidation value of the Companies' business, and that the Companies are acting in good faith and with due diligence;

**AND UPON HEARING** the submissions of counsel for the Companies, the Proposal Trustee, Canadian Imperial Bank of Commerce ("**CIBC**") and such other counsel in attendance;

**IT IS HEREBY ORDERED AND DECLARED THAT:**

**DEFINITIONS**

1.      Capitalized terms not defined in this Order shall have the meanings attributed to them in the Second Allen Affidavit or the APA.

**SERVICE**

2.      Service of notice of this application and supporting materials is hereby declared to be good and sufficient, no other person is required to have been served with notice of this application, and time for service of this application is abridged to that actually given.

**APPROVAL OF TRANSACTION**

3.      The Transaction is hereby approved, and the execution of the APA and the TSA by the Companies is hereby authorized and approved, with such minor amendments as the Companies may deem necessary. The Companies are hereby authorized and directed to take such additional steps, perform, consummate, implement, execute and deliver such additional documents, including conveyance documents, bills of sale, assignments, transfers, deeds, indicia of title, tax elections, documents and instructions of whatsoever nature and kind as may be necessary or desirable for completion of the Transaction and conveyance of the Purchased Assets to the Purchasers (or their nominee).

**VESTING OF PROPERTY**

4.      Upon delivery of a Proposal Trustee's certificate to the Purchasers (or either of them, or their nominee), pursuant to the Canadian Closing or the US Closing (as defined in the APA), substantially in the form set out in Schedule "**A**" hereto (each respectively a "**Proposal Trustee's Certificate**"), all of the respective Company's right, title, and interest in and to the applicable Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable, shall vest absolutely in the name of the applicable Purchaser (or its nominee), free and clear of and from any and all caveats, security interests (whether contractual, statutory, or otherwise), hypothecs, pledges, mortgages, liens, trusts or deemed trusts (whether contractual, statutory, or otherwise), reservations of ownership, royalties, options, rights of pre-emption, privileges, interests, assignments, actions, judgements, executions, levies, taxes, writs of enforcement, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing:

(i)      any encumbrances or charges created by, (i) the Order of Justice J.S. Little of this Court in these proceedings dated November 8, 2022, and (ii) any other orders in these proceedings, in the event future orders modify or create additional charges;

(ii)      all charges, liens, security interests or claims, whether evidenced by registrations pursuant to the *Personal Property Security Act* (Alberta), the Uniform Commercial Code (United States) or any other personal property registry system, or otherwise; and

(iii)      those Claims listed in Schedule "**B**" hereto (all of which are collectively referred to as the "**Encumbrances**", which term shall not include the encumbrances, caveats, interests, easements and restrictive covenants listed in Schedule "**C**" (collectively, "**Permitted Encumbrances**"))

and for greater certainty, this Court orders that all Claims, including Encumbrances other than Permitted Encumbrances, affecting or relating to the Purchased Assets that are the subject of the Canadian Closing or US Closing, as applicable, are hereby expunged, discharged, and terminated as against those Purchased Assets.

5.      Upon delivery of a Proposal Trustee's Certificate, and upon filing of a copy of this Order, together with any applicable registration fees, all governmental authorities including those referred to below in this paragraph (collectively, "**Governmental Authorities**") are hereby

authorized, requested and directed to accept delivery of such Proposal Trustee's Certificate and copy of this Order as though they were originals and to register such transfers, interest authorizations, discharges and discharge statements of conveyance as may be required to convey to the applicable Purchaser or its nominee clear title to the Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable, subject only to Permitted Encumbrances.

6.    The aid and assistance of the officials of the public registries of any province or territory of Canada or the United States is requested to give effect to this Order; the Registrars of the Alberta Personal Property Registry, the British Columbia Personal Property Registry, the Saskatchewan Personal Property Registry, and the Ontario Personal Property Registry shall and are hereby directed to forthwith cancel and discharge any registrations at its respective Personal Property Registry (whether made before or after the date of this Order) claiming security interests (other than Permitted Encumbrances) in the estate or interest of the Companies in any of the Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable, which are of a kind prescribed by applicable regulations as serial-numbered goods.

7.    In order to effect the transfers and discharges described above, this Court directs each of the Governmental Authorities to take such steps as are necessary to give effect to the terms of this Order and the APA. Presentment of this Order and a Proposal Trustee's Certificate shall be the sole and sufficient authority for the Governmental Authorities to make and register transfers of title or interest and cancel and discharge registrations against any of the Purchased Assets of any Claims including Encumbrances but excluding Permitted Encumbrances.

8.    No authorization, approval or other action by and no notice to or filing with any governmental authority or regulatory body exercising jurisdiction over the Purchased Assets is required for the due execution, delivery and performance by the Companies of the APA.

9.    For the purposes of determining the nature and priority of Claims, net proceeds from sale of the Purchased Assets (to be held in an interest bearing trust account by the Proposal Trustee) shall stand in the place and stead of the Purchased Assets, and from and after the delivery of a Proposal Trustee's Certificate all Claims, including Encumbrances (but excluding Permitted Encumbrances) shall not attach to, encumber, or otherwise form a charge, security interest, lien, or other Claim against the applicable Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable, and may only be asserted against the net

proceeds from the sale of those Purchased Assets with the same priority as they had with respect to those Purchased Assets immediately prior to the sale, as if those Purchased Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

**CLOSING OF THE SALE TRANSACTION**

10.    Except as expressly provided for in the APA or by section 5 of the Alberta *Employment Standards Code*, the Purchasers (or their nominee, if any) shall not by completion of the Transaction, have any liability of any kind whatsoever in respect of any Claims against the Companies.

11.    Upon completion of the applicable Transaction and issuance of a Proposal Trustee's Certificate pursuant to the Canadian Closing or the US Closing (as defined in the APA), the applicable Company and all persons who claim by, through, or under it in respect of those Purchased Assets, and all persons or entities having any Claims of any kind whatsoever in respect of those Purchased Assets, save and except for persons entitled to the benefit of the Permitted Encumbrances, shall stand absolutely and forever barred, estopped and foreclosed from and permanently enjoined from pursuing, asserting, or claiming any and all right, title, estate, interest, royalty, rental, equity of redemption or other Claim whatsoever in respect of or to those Purchased Assets and, to the extent that any such persons or entities remain in possession or control of any of those Purchased Assets, or any certificates, instruments or other indicia of title representing or evidencing any right, title, estate, or interest in and to those Purchased Assets, they shall forthwith deliver possession thereof to the applicable Purchaser (or its nominee).

12.    Upon completion of the applicable Transaction and issuance of a Proposal Trustee's Certificate pursuant to the Canadian Closing or the US Closing (as defined in the APA), the applicable Purchaser (or its nominee) shall be entitled to enter into and upon, hold, and enjoy the applicable Purchased Assets for its own use and benefit without any interference of or by the Companies, or any person claiming by, through, or against the Companies.

13.    Immediately upon completion of the applicable Transaction and issuance of a Proposal Trustee's Certificate pursuant to the Canadian Closing or the US Closing (as defined in the APA), holders of Permitted Encumbrances shall have no claim whatsoever against the applicable Company or the Proposal Trustee.

14.   The Proposal Trustee is directed to file with the Court a copy of each Proposal Trustee's Certificate, forthwith after delivery thereof to the applicable Purchaser (or its nominee).

15.   Pursuant to clause 7(3)(c) of the *Personal Information Protection and Electronic Documents Act* (Canada), section 20(e) of the *Personal Information Protection Act* (Alberta), and any other equivalent provision in any other provincial statute, the Companies are authorized and permitted to disclose and transfer to the Purchasers all human resources and payroll information in the Companies' records pertaining to the Companies' past and current employees, including personal information of those employees listed in the APA.   The Purchasers (or their nominee) shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Companies.

**MISCELLANEOUS MATTERS**

16.   Notwithstanding:

   (i)   the pendency of these proceedings;

   (ii)   any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, RSC 1985, c B-3, as amended (the "**BIA**"), or the United States Bankruptcy Code, in respect of the Companies and any bankruptcy order issued pursuant to any such applications;

   (iii)   any assignment in bankruptcy made in respect of the Companies; and

   (iv)   the provisions of any federal or provincial statute:

   the vesting of the Purchased Assets in the Purchasers (or their nominee) pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the Companies and shall not be void or voidable by creditors of the Companies, nor shall it constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transaction under the BIA or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

17.   The Companies, the Proposal Trustee, the Purchasers (or their nominee), and any other interested party shall be at liberty to apply for further advice, assistance, and directions as may

be necessary in order to give full force and effect to the terms of this Order and to assist and aid the parties in closing the Transaction.

18.     This Honourable Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, or in any of its provinces or territories or in any foreign jurisdiction including specifically, the United States of America, including the United States Bankruptcy Court, to act in aid of and to be complimentary to this Court in carrying out the terms of this Order, and to give effect to this Order and to assist the Companies in carrying out the terms of this Order. All courts, tribunals regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Companies as may be necessary or desirable to give effect to this Order or to assist the Companies and their agents in carrying out the terms of this Order.

19.     Each of the Companies or the Proposal Trustee shall be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

**SERVICE OF ORDER**

20.     Service of this Order shall be deemed good and sufficient:

(i)     by serving same on the persons who were served with notice of this Application and any other parties attending or represented at the hearing of the Application; and

(ii)     by posting a copy of this Order on the Proposal Trustee's website at: https://www.ksvadvisory.com/experience/case/nilex-inc.

21.     Service of this Order on any other person is hereby dispensed with.

22.     Service of this Order may be effected by facsimile, electronic mail, personal delivery or courier. Service is deemed to be effected the next business day following transmission or delivery of this Order.

Justice of the Court of King's Bench of Alberta

**Schedule "A"**

**Form of Proposal Trustee's Certificate**

| | |
|---|---|
| COURT FILE NUMBER | 24-2878531 |
| COURT | COURT OF KING'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | EDMONTON |
| | IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED |
| APPLICANTS | NILEX INC. AND NILEX USA INC. |
| DOCUMENT | **PROPOSAL TRUSTEE'S CERTIFICATE** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | **Cassels Brock & Blackwell LLP** Suite 3810, 3500 Bankers Hall West 888 3rd Street SW Calgary, Alberta  T2P 5C5 |

Clerk's Stamp

Attention:    Jane Dietrich / Danielle Maréchal
Telephone:   416-260-5223 / 403-351-2922
Facsimile:   403-648-1151
Email:        jdietrich@cassels.com /
              dmarechal@cassels.com

**RECITALS**

A. Pursuant to the filing of notices of intention to make a proposal under section 50.4(1) of the *Bankruptcy and Insolvency Act* (Canada) on October 27, 2022 by Nilex Inc. and on November 24, 2022 by Nilex USA Inc., KSV Restructuring Inc. consented to act as the Proposal Trustee.

B. Pursuant to an Order of the Court dated November 28, 2022, the Court approved the Asset Purchase Agreement dated November 18, 2022 (the "**APA**"), between Nilex Inc. and Nilex USA Inc. (the "**Vendors**") and Terrafix Geosynthetics Inc. and Hanes Companies, Inc. (the "**Purchasers**"), and provided for the vesting in the Purchasers of the Vendors' right, title and interest in and to the Purchased Assets (the "**Transaction**"), which vesting is to be effective with respect to the Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable, upon the delivery by the Proposal Trustee to the Purchasers of a certificate or certificates confirming: (i) the payment by the Purchasers of the Purchase Price for the Purchased Assets that are the subject of the Canadian Closing or the US Closing, as applicable; (ii) that the conditions to Canadian Closing or the US Closing, as applicable, as set

out in the APA have been satisfied or waived by the Vendors and the Purchasers; and (iii) the Applicable Transaction (as defined in the APA) has been completed to the satisfaction of the Vendors.

C.  Unless otherwise indicated herein, capitalized terms have the meanings set out in the Order (Sale Approval and Vesting).

**THE PROPOSAL TRUSTEE CERTIFIES** the following:

1.  The Purchaser (or its nominee) has paid and the Proposal Trustee has received the **[Canadian / US]** Purchase Price for the Purchased Assets payable on the Closing Date **[for the Canadian Closing / US Closing]** pursuant to the APA;

2.  The conditions to Closing **[for the Canadian Closing / US Closing]** as set out in sections 7.1, 7.2 and 7.3 of the APA have been satisfied or waived by the Vendors and the Purchasers (or their nominee);

3.  The Applicable Transaction (as defined in the APA) has been completed to the satisfaction of the Vendors and the Vendors have notified the Proposal Trustee of this in writing; and

4.  This Certificate was delivered by the Proposal Trustee at **[City]**, **[Province]** on _____**[Date]**, 2022 at _____**[a.m./p.m. Edmonton Time]**.

> **KSV RESTRUCTURING INC.,** IN ITS CAPACITY
> AS PROPOSAL TRUSTEE OF **NILEX INC.** AND
> **NILEX USA INC.** AND NOT IN ITS PERSONAL OR
> CORPORATE CAPACITY

> Per:_____
> Name:
> Title:

## Schedule "B"

### Encumbrances to be Expunged and Discharged

The Purchased Assets shall be conveyed to the applicable Purchaser free and clear of all Encumbrances (other than Permitted Encumbrances) (each as defined in the APA), including without limitation the following:

## Canadian Encumbrances to be Expunged and Discharged

*Alberta*

| Registration Number | Registration Date | Registering Party | Nature of Registration |
|---|---|---|---|
| 10010720861 | January 7, 2010 | Element Fleet Management Inc. | Security Agreement |
| 13042623420 | April 26, 2010 | PEF 2010 Nilex Investment Limited Partnership<br><br>FCPI Nilex GP Inc. | Land Charge |
| 13042623460 | April 26, 2010 | PEF 2010 Nilex Investment Limited Partnership | Security Agreement |
| 22060620459 | June 6, 2022 | Ian Wilson | Writ of Enforcement |
| 22062937083 | June 29, 2022 | Leavitt Machinery Canada Inc. | Security Agreement |
| 22071219384 | July 12, 2022 | Hugh Watt | Writ of Enforcement |

*British Columbia*

| Registration Number | Registration Date | Registering Party | Nature of Registration |
|---|---|---|---|
| 314726H | April 26, 2013 | PEF 2010 Nilex Investment Limited Partnership<br><br>FCPI Nilex GP Inc. | Security Agreement |
| 785579K | May 28, 2018 | Canadian Imperial Bank of Commerce | Security Agreement |

*Saskatchewan*

| Registration Number | Registration Date | Registering Party | Nature of Registration |
|---|---|---|---|
| 301015975 | April 26, 2013 | PEF 2010 Nilex Investment Limited Partnership<br><br>FCPI Nilex GP Inc. | Security Agreement |
| 301770425 | May 28, 2018 | Canadian Imperial Bank of Commerce | Security Agreement |

*Ontario*

| Registration Number | Registration Date | Registering Party | Nature of Registration |
|---|---|---|---|
| 20130426 1704 1462 6168 | April 26, 2013 | PEF 2010 Nilex Investment Limited Partnership<br><br>FCPI Nilex GP Inc. | Security Agreement |

## U.S. Encumbrances to be Expunged and Discharged

*Colorado*

| Registration Number | Registration Date | Registering Party | Nature of Registration |
|---|---|---|---|
| 20182049545 | June 1, 2018 | Canadian Imperial Bank of Commerce | Security Agreement |

### Schedule "C"

### Permitted Encumbrances

At the closing of the Transaction, the applicable Purchaser will be conveyed clear title to the applicable Purchased Assets subject to the Permitted Encumbrances as set forth in the APA in the definition of "Permitted Encumbrances".

| | | |
|---|---|---|
| COURT FILE NUMBER | 24-2878531 | Clerk's Stamp |
| COURT | COURT OF KING'S BENCH OF ALBERTA | |
| JUDICIAL CENTRE | EDMONTON | |

IN THE MATTER OF THE NOTICE OF INTENTION TO MAKE A PROPOSAL UNDER SECTION 50.4(1) OF THE *BANKRUPTCY AND INSOLVENCY ACT*, RSC 1985, c B-3, AS AMENDED

APPLICANTS        NILEX INC. and NILEX USA INC.

DOCUMENT        **ORDER (sealing confidential appendices)**

ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT

**BLAKE, CASSELS & GRAYDON LLP**
Barristers and Solicitors
3500 Bankers Hall East
855 – 2nd Street SW
Calgary, Alberta T2P 4J8

Attention:    Kelly Bourassa / Alexia Parente
Telephone:   403-260-9697 / 416-863-2417
Email:        kelly.bourassa@blakes.com / alexia.parente@blakes.com

Fax No.:      403-260-9700
File Ref.:     99580/8

**DATE ON WHICH ORDER WAS PRONOUNCED**      November 28, 2022

**LOCATION OF HEARING:**      Calgary, Alberta (via Webex)

**NAME OF JUDGE WHO MADE THIS ORDER:**      The Honourable Justice M.H. Hollins

      **UPON THE APPLICATION** by Nilex Inc. and Nilex USA Inc. (the "**Companies**"), for an order, among other things, sealing the confidential appendices (collectively, the "**Confidential Appendices**") to the second report of KSV Restructuring Inc. in its capacity as proposal trustee of Nilex Inc. (the "**Proposal Trustee**") dated November 21, 2022 (the "**Second Report**");

      **AND UPON HAVING READ** the Application, the Affidavit of Jeff Allen sworn November 21, 2022, the Second Report, the Confidential Appendices thereto, the Affidavit of Service of Lindsay Farr sworn November 24, 2022, and such other material in the pleadings and proceedings as deemed necessary;

**Exhibit 4**

**AND UPON HAVING BEEN ADVISED** by counsel to the Companies that the applicable notice pursuant to Rule 6.32 of the *Alberta Rules of Court,* Alta Reg 124/2010 was given;

**AND UPON HEARING** the submissions of counsel for the Companies, the Proposal Trustee, CIBC and such other counsel in attendance;

**IT IS HEREBY ORDERED AND DECLARED THAT:**

**DEFINITION**

1.    Capitalized terms not defined in this Order shall have the meanings attributed to them in the Second Allen Affidavit.

**SEALING ORDER**

2.    Notwithstanding Division 4 of Part 6 of the *Alberta Rules of Court*, Alta Reg 124/2010, the Confidential Appendices shall, until the earlier of the termination of the TSA, or further Order of this Honourable Court, be sealed on the Court file and kept confidential to be shown only to a Justice of the Court of King's Bench of Alberta, and accordingly, shall be filed with the Clerk of the Court who shall keep the Confidential Appendices in a sealed envelope attached to a notice that sets out the style of cause of these proceedings and states:

> THIS ENVELOPE CONTAINS CONFIDENTIAL MATERIALS FILED IN COURT FILE NO. 24-2878531. THE CONFIDENTIAL MATERIALS ARE SEALED PURSUANT TO THE SEALING ORDER ISSUED BY THE HONOURABLE JUSTICE M.H. HOLLINS ON NOVEMBER 28, 2022.

3.    The Companies and the Proposal Trustee are empowered and authorized, but not directed, to provide the Confidential Appendices (or any portion thereof, or information contained therein) to any interested party, entity or person that the Companies or Proposal Trustee considers reasonable in the circumstances, subject to confidentiality arrangements satisfactory to the Companies or the Proposal Trustee.

4.    Leave is hereby granted to any person, entity or party affected by this Order to apply to this Court for a further Order vacating, substituting, modifying or varying the terms of this Order, with such application to be brought on five (5) days' notice to the Proposal Trustee

and the Companies and any other affected party in accordance with the *Alberta Rules of Court,* Alta Reg 124/2010 and this Order.

5.    This Order must be served only upon those interested parties attending or represented at the within application and service may be affected by facsimile, electronic mail, personal delivery, or courier. Service is deemed to be affected the next business day following the transmission or delivery of such documents.

6.    Service of this Order on any party not attending this application is hereby dispensed with.

_____

Justice of the Court of King's Bench of Alberta